UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:10CR158-PPS |
| vs. ) | and |
| ) | No. 2:13CV495-PPS |
| JUAN C. RAMIREZ-FUENTES, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Juan C. Ramirez-Fuentes was convicted at trial of one count of possession with the intent to distribute more than 500 grams of methamphetamine and one count of possession of firearms in furtherance of that drug trafficking crime. [DE 91.] Originally I sentenced Juan to an aggregate term of 295 months' imprisonment. [DE 119.] But I later reduced the sentence to 248 months after granting Ramirez-Fuentes' motion under 18 U.S.C. §3583(c)(2) based on a retroactive change to the Sentencing Guidelines applicable to drug crimes. [DE 177, 179.]

Acting *pro se*, Ramirez-Fuentes has filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. §2255 [DE 150].[1] After the *pro se* motion was briefed, I determined that an evidentiary hearing and oral argument were warranted on several of Juan's grounds for relief, and appointed counsel to represent him. Following the hearing, Juan has moved to withdraw all of his grounds for relief but one, and the parties have filed

---

[1] Juan's brother Jaime Ramirez-Fuentes was indicted with Juan in the case. Jaime entered a plea of guilty to the drug distribution charge in Count 1, and received the dismissal of all other charges. Jaime was sentenced to the mandatory minimum sentence of 120 months. Intending no disrespect but to distinguish between the defendants and avoid confusion, I will refer to the movant here as "Juan."

additional briefs. The matter is ripe for ruling on the remaining claim of Juan's motion to vacate.

In the only remaining claim, Juan makes an ineffective assistance of counsel argument based on his trial counsel's advice to him concerning plea negotiations with the government. Criminal defendants' Sixth Amendment right to the effective assistance of counsel "extends to the plea-bargaining process," during which defendants are entitled to competent counsel. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). Claims that counsel did not render such effective assistance are subject to the familiar two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of the test requires a showing that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. The second prong of the *Strickland* test generally requires a defendant to demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id*. at 694.

"The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012). One of defense counsel's responsibilities is "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 1408. Another is to give reasonably competent advice concerning the ramifications of a plea offer. *Padilla v. Kentucky*, 559 U.S. 356, 369-70 (2010)

(regarding counsel's "critical obligation" to advise the client of a plea agreement's advantages and disadvantages and citing *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)); *Pidgeon v. Smith*, 785 F.3d 1165, 1172 (7th Cir. 2015); *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010).

Here is what Juan says his lawyer's failings were:

- trial counsel did not advise him that the government made three separate plea offers;

- the attorney misrepresented Juan's total sentencing exposure;

- counsel failed to advise Juan that his motion to suppress had been denied and the impact of that on his trial defense; and

- Juan's attorney "essentially guaranteed that he would be exonerated at trial and never properly apprised him of the strength of the case against him."

[DE 203 at 3.] At the evidentiary hearing, I heard the testimony of Juan and his wife, as well as both of Juan's trial counsel and an assistant warden of the Lake County Jail, where Juan was housed during a portion of his pretrial detention. Based on the evidence and record in this case, I make the following findings of fact relevant to the determination of Juan's ineffective assistance of counsel claim.

Juan was arrested on the charges in this case on August 25, 2010. [DE 4.] On August 27, attorney Gal Pissetzy entered his appearance for Juan, having been hired by Juan's wife. [DE 8.] Mrs. Ramirez speaks English fluently, but Juan speaks Spanish and is not proficient in English. Pissetzky is not proficient in Spanish but often works as co-counsel with

3

attorney John DeLeon, who speaks fluent Spanish. Mrs. Ramirez had met with both Pissetzky and DeLeon, and in the course of the representation, Pissetzky never met with Juan alone, without DeLeon to interpret. As a pretrial detainee in this case, Juan was housed at the Porter County Jail from August 25, 2010 to December 2, 2010. On December 2, Juan was transferred to the Lake County Jail, where he remained until after his trial.

Because Pissetzky undertook the representation on a flat fee basis, he did not create itemized billing statements and so did not maintain records of his time spent on the case or the dates and times of meetings with his client. On October 26, 2010, Pissetzky filed a motion to suppress evidence. [DE 26.] In order to assert facts about the search in the motion, Pissetzky must have met with Juan prior to filing the motion to suppress, although Pissetzky doesn't specifically remember the date of doing so and the records of the Porter County Jail do not reflect a visit prior to October 26. At that meeting, Pissetzky and DeLeon had Juan sign his name multiple times on a legal pad as signature exemplars in connection with Juan's dispute that he had signed the consent to search form.

Pissetzky recalled that from early on in the case, Juan insisted on his innocence. Counsel were with Juan in court on November 16, when a hearing on the suppression motion was set. [DE 31.] The hearing ended up being continued to December 10. [DE 32.] The Porter County Jail's visitor logs reflect that Pissetzky and DeLeon visited Juan on November 26, 2010, prior to the new suppression hearing setting. After that visit, Pissetzky asked the government for a plea offer. On December 6, Pissetzky filed an unopposed motion to continue the suppression hearing again, representing that the defense had

4

received a plea agreement that counsel needed time to review it with Juan in hopes of resolving the case short of trial. [DE 35.] The motion was granted and the suppression hearing was reset for January 18, 2011. [DE 36, 37.]

The first tendered plea agreement, received by defense counsel on December 2, represented a guilty plea to the drug count and the dismissal of the gun count brought under 18 U.S.C. § 924(c). [DE 186-1 at 4, 5.] This was a significant concession by the government given the five year mandatory minimum sentence required under § 924(c). The agreement contained the government's recommendation for a sentence at the minimum of whatever Sentencing Guideline range was found to apply to his case. The proposed agreement also contemplated Juan's cooperation. [*Id.* at 5.] Because Pissetzky did not want the Guidelines minimum to function as a floor below which the sentence would not go even with Juan's cooperation, he asked the government to remove the sentencing recommendation. The government agreed and produced an amended plea agreement on December 3, from which the recommendation for a minimum Guidelines sentence had been removed at Pissetzky's request. [DE 186-2 at 5.]

Attorneys Pissetzky and DeLeon both met with Juan at the Lake County Jail to review the two plea agreements on December 21, 2010. Pissetzky spoke to Juan via DeLeon's Spanish interpretation. Counsel went over the drug calculations under the Sentencing Guidelines, explained the mandatory minimum sentence of 10 years on Count 1, and explained the sentencing impact of pleading guilty versus being convicted at trial. Those ramifications included credit under the Sentencing Guidelines for accepting

5

responsibility, and that in exchange for the guilty plea the government would drop the gun charge, which, as noted, carried a mandatory five-year consecutive term of imprisonment. Handwritten notations in the margins of the draft plea agreement reflect Pissetzky's explanation of the total offense level and the potential imprisonment range under the Guidelines. [DE 189-1 at 18-19.] Pissetzky also discussed the possible ramifications of deportation based on a conviction in the case, whether at trial or by a guilty plea. As a result, Juan understood that the only sure way to avoid deportation was to win at trial. These findings are supported by the credible testimony of both counsel and by Pissetzky's affidavit. [DE 162.]

Juan rejected the plea agreement and maintained his innocence. As is their occasional practice, Pissetzky and DeLeon had defendant sign the following statement handwritten in English and Spanish on the last page of one of the plea agreements: "I have been explained this plea agreement and choose to reject it and go to trial." [DE 189-1 at 22.] DeLeon and Pissetzky signed as witnesses. [*Id.*] Pissetzky testified that he takes this step when a client denies any responsibility and claims his innocence though the discovery indicates otherwise, so that he as counsel is in a position to prove that his client refused the plea agreement that was presented to him. The signatures on the handwritten notation are dated and confirm that this conference with counsel occurred on December 21, 2010. The jail's visitor logs do not reflect Pissetzky or DeLeon's visit that day, and so are obviously not entirely accurate in reflecting every time attorneys visit their clients in the jail. Pissetzky conveyed his client's refusal to the government, which offered a third plea

agreement without cooperation in it, but with the provision for the government's recommendation of a minimum Guidelines sentence reinserted. [DE 186-3.] Counsel presented that plea offer but Juan again refused, remaining adamant that he would not plead guilty to something he did not do.

On February 23, 2011, I issued an order denying the motion to suppress. [DE 43.] DeLeon believes he advised Juan of the ruling during a telephone conversation initiated by Juan, who would occasionally call the office collect from jail. Pissetzky and DeLeon later visited Juan in jail to advise him of the suppression ruling. Pissetzky showed Juan my opinion as well as a newspaper article about the ruling that Pissetzky believed reflected counsel's good work on the motion. [DE 189-3.] With the encouragement of Juan's wife, who wanted Juan to take a guilty plea, Pissetzky continued plea negotiations with the government but Juan was steadfast in denying his involvement, attributing all culpability to Jaime, his co-defendant and brother. Months later, only days prior to trial, Pissetzky inquired of the government whether any other plea agreement was possible, and was told that the only possibility was for Juan to plead in the blind to both counts.

Consistent with these findings, I reject each of Juan's factual contentions concerning his counsel's performance as outlined above. [*Supra* p. 3.] I flatly disbelieve Juan's claim that Pissetzky or DeLeon encouraged Juan to go to trial and made assurances that they would definitely "win" the case. I also disbelieve Mrs. Ramirez's claim that Pissetzky told her he would get her husband "out." Pissetzky and DeLeon are experienced criminal defense attorneys with more than fifty years of practice between them that is 95% or more

in criminal defense. It is frankly beyond belief that experienced criminal defense attorneys would give such assurances. To the contrary, DeLeon credibly testified that whenever he is asked by his clients if he can win at trial, he responds that only God knows the future but that counsel will fight as hard as they can to protect the client's every right. Also Pissetzky's persistence in negotiating plea agreements with the government is at odds with the stance Juan attributes to Pissetzky. The request Pissetsky filed to continue the suppression hearing [DE 35] reflected that the was hopeful for a plea agreement, not hell-bent on trial. Similarly, Juan's claim that Pissetzky advised him that 15 years was his maximum sentencing exposure is not credible, in a case where counsel knew that the statutory *minimum* sentence was 15 years (10 years on Count 1 plus a mandatory consecutive 5 years on Count 2).

Juan's credibility is further diminished by the inconsistencies in his inherently unpersuasive factual assertions. In his brief, Juan alleges that in reviewing the first two plea offers with him during the December 21 jail visit, counsel told him "if [he] signed the plea he would be deported and therefore they needed to take the case to trial." [DE 186 at10.] In his hearing testimony, Juan said he didn't remember any such advice. Juan's brief also contends that his counsel advised him "that there was no sense in cooperating because the Government never gives a break to a Defendant who cooperates." [*Id.*] Such advice is so obviously wrong as to be unbelievable, and at the hearing Juan gave no testimony in support of his earlier assertion that this advice had been given to him.

For another reason, Juan's own testimony defeats §2255 relief on his claim concerning the plea negotiations. To support his claim that his trial counsel's ineffectiveness caused him to reject a beneficial plea offer, Juan must show "not only that [counsel] acted in error, but also that [with competent advice] there is a reasonable probability that the plea offer would have been presented to the court, *that the court would have accepted it*, and that the conviction or sentence or both would have been less severe than the judgment imposed." *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013) (emphasis added). Juan testified at the hearing on his §2255 motion that he would have pled guilty to a "good deal" even though he wasn't really guilty. If Juan was unwilling to admit the facts establishing the elements of the offense of possession with intent to distribute, I could not have taken a plea of guilty from him.

For all these reasons, I conclude that Juan Ramirez-Fuentes has not established that his trial counsel offered unreasonably deficient performance in negotiating or advising him concerning a possible guilty plea, nor that Juan was prejudiced by any of counsel's conduct in this regard. Juan's other grounds for relief are being withdrawn, and I will deny his motion to vacate on this sole remaining claim, which I find to be without merit.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Juan must show that reasonable jurists could debate whether his petition

should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Because I find that Juan's one remaining ground for relief does not present even a debatable basis for relief from his conviction or sentence, I will deny a certificate of appealability.

ACCORDINGLY:

Defendant Juan C. Ramirez-Fuentes's Motion Withdrawing Certain Issues Raised in Preliminary §2255 Filing [DE 203] is GRANTED.

Defendant Juan C. Ramirez-Fuentes's Motion to Vacate, Correct, or Set Aside His Conviction under 28 U.S.C. §2255 [DE 150] is DENIED. The Clerk shall enter judgment accordingly.

A certificate of appealability is DENIED.

SO ORDERED this 24th day of March, 2016.

/s/ Philip P. Simon
**Chief Judge**